1   LIEFF CABRASER HEIMANN &
    BERNSTEIN, LLP
2   Jonathan D. Selbin
    (State Bar No. 170222)
3   Email: jselbin@lchb.com
    Douglas I. Cuthbertson
4   (admitted *pro hac vice*)
    Email: dcuthbertson@lchb.com
5   250 Hudson Street, 8th Floor
    New York, NY 10013
6   Telephone: (212) 355-9500
    Facsimile: (212) 355-9592
7
8   LIEFF CABRASER HEIMANN &
    BERNSTEIN, LLP
9   Daniel M. Hutchinson
    (State Bar No. 239458)
10  Email: dhutchinson@lchb.com
    275 Battery Street, 29th Floor
11  San Francisco, CA 94111-3339
    Telephone: (415) 956-1000
12  Facsimile: (415) 956-1008

    [Additional counsel listed on signature page]

    MEYER WILSON CO., LPA
    Matthew R. Wilson
    (State Bar No. 290743)
    Email: mwilson@meyerwilson.com
    Michael J. Boyle, Jr.
    (State Bar No. 256580)
    Email: mboyle@meyerwilson.com
    1320 Dublin Road, Ste. 100
    Columbus, OH 43215
    Telephone: (614) 224-6000
    Facsimile: (614) 224-6066

13
14  *Attorneys for Plaintiffs and the Class*

15          UNITED STATES DISTRICT COURT

16          CENTRAL DISTRICT OF CALIFORNIA

17                SOUTHERN DIVISION

18
19  RICHARD WANNEMACHER and
    VANESSA BROWN REESE,
20  individually and on behalf of all others
    similarly situated,
21
              Plaintiffs,
22
    v.
23
    CARRINGTON MORTGAGE
24  SERVICES, LLC,
25
              Defendant.
26
27
28

CASE NO. SACV 12-02016 FMO
(ANx)

**PLAINTIFFS' MOTION AND
MEMORANDUM IN SUPPORT OF
MOTION FOR ATTORNEYS' FEES
AND COSTS AND FOR SERVICE
AWARDS TO THE CLASS
REPRESENTATIVES**

Hearing Date:   June 26, 2014
Time:           10:00 a.m.
Place:          Courtroom 22
Before the Hon. Fernando M. Olguin

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION .................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................ 2

I.     INTRODUCTION ......................................................................... 2

II.    BACKGROUND ............................................................................ 3

     A.    The Settlement Represents an Outstanding Result for the Class ......... 3

         1.    The Prospective Changes Benefitting the Class. ....................... 3

         2.    The Common Settlement Fund Achieved for the Class. ........... 4

     B.    Class Counsel Undertook Considerable Risk in Prosecuting this Action. ..................................................................................... 5

     C.    Class Counsel Minimized Duplicative Work. ...................................... 7

III.   ARGUMENT AND AUTHORITY .................................................... 7

     A.    The Requested Fee Award is Fair, Reasonable, and Justified. ............. 7

         1.    The Requested Fee is Presumptively Reasonable because it Resulted from Arm's Length Negotiations. ........................... 9

         2.    The Court Should Apply the Percentage-of-the-Fund Method. ................................................................................... 9

         3.    Class Counsel's Fee Request is Warranted Under the Percentage-of-the-Fund Method. ................................................ 12

             a.    Class Counsel have Obtained an Excellent Result ........ 13

             b.    The Risks of Litigation Supports the Requested Fee.    ............................................................... 15

             c.    The Skill Required and Quality of Work Performed Supports the Requested Fee. ........................................... 15

             d.    Class Counsel's Undertaking of the Actions on a Contingency-Fee Basis Supports the Requested Fee.    ............................................................... 16

             e.    The Requested Fee Comports with Fees Awarded in Similar Actions ........................................................... 17

         4.    A Lodestar Plus Multiplier Cross-Check Supports the Requested Fee. ................................................................. 18

             a.    Class Counsel's Lodestar is Reasonable. ...................... 19

             b.    No Multiplier Is Sought .................................................. 21

     B.    Class Counsel Are Not Seeking Reimbursement of their Costs on Top of the Fee Award, Although Such Reimbursement Would be Justified. ............................................................................. 22

     C.    The Named Plaintiffs' Service Awards Are Reasonable .................... 23

IV.   CONCLUSION ................................................................................... 25

# TABLE OF AUTHORITIES

**Page**

## CASES

*Adams v. AllianceOne Receivables Mgmt., Inc.*,
No. 3:08-cv-00248-JAH-WVG (S.D. Cal. Sept. 28, 2012) .......................... 17, 22

*Antonopulos v. N. Am. Thoroughbreds, Inc.*,
No. 87-0979G (CM), 1991 U.S. Dist. LEXIS 12579
(S.D. Cal. May 6, 1991) .................................................................................... 18

*Behrens v. Wometco Enter., Inc.*,
118 F.R.D. 534 (S.D. Fla. 1988), aff'd,
899 F.2d 21 (11th Cir. 1990) ............................................................................ 11

*Bellows v. NCO Financial Systems, Inc.*,
No. 07-CV-1413 W (AJB), 2009 U.S. Dist. LEXIS 273
(S.D. Cal. Jan 5, 2009) ..................................................................................... 17

*Blum v. Stenson*,
465 U.S. 886 (1994) .......................................................................................... 20

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ............................................................................................ 8

*Craft v. County of San Bernardino*,
624 F. Supp. 2d 1113 (C.D. Cal. 2008) ........................................................ 21, 22

*Di Giacomo v. Plains All Am. Pipeline*,
No. H-99-4137, 2001 U.S. Dist. LEXIS 25532
(S.D. Tex. Dec. 18, 2001) ................................................................................ 22

*Fitzgerald v. City of Los Angeles*,
No. CV 03-01876 NM, 2003 U.S. Dist. LEXIS 27382
(C.D. Cal. Dec. 8, 2003) .................................................................................... 25

*Fulford v. Logitech, Inc.*,
No. 08-cv-02041 MMC, 2010 U.S. Dist. LEXIS 144437
(N.D. Cal. Mar. 5, 2010) .................................................................................. 21

*Garner v. State Farm*,
No. CV 08 1365 CW, 2010 U.S. Dist. LEXIS 49482
(N.D. Cal. Apr. 22, 2010) ................................................................................ 12

*Gene & Gene LLC v. BioPay LLC*,
541 F.3d 318 (5th Cir. 2008) .............................................................................. 6

*Glass v. UBS Fin. Servs.*,
No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8476
(N.D. Cal. Jan. 26, 2007) .................................................................................. 18

*Grannan v. Alliant Law Group, P.C.*,
No. C10-02803 HRL, 2012 U.S. Dist. LEXIS 8101
(N.D. Cal. Jan. 24, 2012) .................................................................................. 17

*Hanlon v. Chrysler Corp*,
150 F.3d 1011 (9th Cir. 1998) ................................................................. 9, 12, 19

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) .................................................................................... 9, 13

PLTFS' MOT. AND MEM. ISO MOT. FOR ATTYS'
FEES AND COSTS AND FOR SERVICE AWARDS
CASE NO. SACV 12-02016 FMO (ANX)

**TABLE OF AUTHORITIES**
(continued)

Page

*Hopson v. Hanesbrands Inc.*,
   No. CV-08-0844 EDL, 2009 U.S. Dist. LEXIS 33900
   (N.D. Cal. Apr. 3, 2009) ................................................................ 24

*In re Activision Sec. Litig.*,
   723 F. Supp. 1373 (N.D. Cal. 1989) ........................................ 10, 11

*In re Apple Computer, Inc. Derivative Litig.*,
   No. C 06-4128 JF (HRL), 2008 U.S. Dist. LEXIS 108195
   (N.D. Cal. Nov. 5, 2008) ................................................................ 9

*In re AXA Rosenberg Investor Litig.*,
   No. 11-cv-00536-JSW, Dkt. No. 73 (N.D. Cal. April 2, 2012) ........ 21

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) .......................................................... 8

*In re Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.*,
   No. 02-ML-1475-DT(RCx), 2005 U.S. Dist. LEXIS 13627
   (C.D. Cal. June 10, 2005) ............................................................. 18

*In re M.D.C. Holdings Sec. Litig.*,
   No. CV 89-0090 E (M), 1990 U.S. Dist. LEXIS 15488
   (S.D. Cal. Aug. 30, 1990) ............................................................. 18

*In re Media Vision Tech. Sec. Litig.*,
   913 F. Supp. 1362 (N.D. Cal. 1995) ............................................. 23

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) .................................................... 14, 18

*In re Mercury Interactive Corp. Sec. Litig.*,
   618 F.3d 988 (9th Cir. 2010) ........................................................ 1, 8

*In re Omnivision*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2007) ................................. passim

*In re Public Service Co.*,
   No. 91-0536M, 1992 U.S. Dist. LEXIS 16326
   (S.D. Cal. July 28, 1992) ............................................................. 18

*In re Trans Union Corp. Privacy Litig.*,
   211 F.R.D. 328 (N.D. Ill. 2002) .................................................... 6

*In re Washington Pub. Power Supply System Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ................................... 8, 10, 11, 16

*Kerr v. Screen Extras Guild, Inc.*,
   526 F.2d 67 (9th Cir. 1975) .......................................................... 19

*Knight v. Red Door Salons, Inc.*,
   No. 08-01520 SC, 2009 U.S. Dist. LEXIS 11149
   (N.D. Cal. Feb. 2, 2009) .......................................................... 12, 18

*Linney v. Cellular Alaska P'ship*,
   No. C-96-3008 DLJ, 1997 U.S. Dist. LEXIS 24300
   (N.D. Cal. July 18, 1997) ........................................................ 13, 14

**TABLE OF AUTHORITIES**
(continued)

Page

*Lo v. Oxnard European Motors, LLC,*
  No. 11CV1009 JLS, 2012 U.S. Dist. LEXIS 73983
  (S.D. Cal. May 29, 2012) ............................................................ 17

*Lopez v. Youngblood,*
  No. CV-F-07-0474 DLB, 2011 U.S. Dist. LEXIS 99289
  (E.D. Cal. Sept. 1, 2011) .................................................. 11, 22

*Maley v. Del Global Techs. Corp.,*
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) .................................. 22

*Meyer v. Portfolio Recovery Associates,*
  707 F.3d 1036 (9th Cir. 2012) .............................................. 6

*Mills v. Electric Auto-Lite Co.,*
  396 U.S. 375 (1970) ............................................................. 23

*Moore v. Verizon Communs., Inc.,*
  No. 09-1823 SBA (JSC), 2013 U.S. Dist. LEXIS 170027
  (N.D. Cal. Nov. 27, 2013) ..................................................... 21

*Nwabueze v. AT&T Inc.,*
  No. C 09-01529 SI, 2014 U.S. Dist. LEXIS 11766
  (N.D. Cal. Jan. 29, 2014) ....................................................... 21

*Odrick v. UnionBanCal Corp.,*
  No. C 10-5565 SBA, 2012 U.S. Dist. LEXIS 171413
  (N.D. Cal. Dec. 3, 2012) ....................................................... 24

*Parker v. Time Warner Entm't Co., L.P.,*
  331 F.3d 13 (2d Cir. N.Y. 2003) ............................................ 6

*Rodriguez v. West Publishing Corp.,*
  563 F.3d 948 (9th Cir. 2009) ............................................... 23

*Ross v. Trex Co.,*
  No. 09-cv-00670-JSW, 2013 U.S. Dist. LEXIS 177732
  (N.D. Cal. Dec. 16, 2013) ...................................................... 21

*Satterfield v. Simon & Schuster, Inc. et al.,*
  No. 06-cv-2893 (N.D. Cal. Aug. 6, 2010) .......................... 17, 24

*Staton v. Boeing Co.,*
  327 F.3d 938 (9th Cir 2003) ....................................... 8, 13, 23

*Steiner v. Am. Broad. Co.,*
  248 Fed. Appx. 780 (9th Cir. Cal. 2007) ............................... 21

*Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.,*
  No. 03-4578, 2005 U.S. Dist. LEXIS 9705
  (E.D. Pa. May 20, 2005) ........................................................ 22

*Swedish Hosp. Corp. v. Shalala,*
  1 F.3d 1261 (D.C. Cir. 1993) ......................................... 10, 22

*Van Vranken v. Atlantic Richfield Co.,*
  901 F. Supp. 294 (N.D. Cal. 1995) ...................................... 24

*Vizcaino v. Microsoft Corp.,*
  290 F.3d 1043 (9th Cir. 2002) ......................................... passim

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Walsh v. Kindred Healthcare*,
No. C 11-00050 JSW, 2013 U.S. Dist. LEXIS 176319
(N.D. Cal. Dec. 16, 2013)............................................................................. 14, 21

**RULES**

Fed. R. Civ. P. 23(e) ..................................................................................................... 8

Fed. R. Civ. P. 23(h) ................................................................................................... 13

**TREATISES**

Federal Judicial Center, *Manual for Complex Litigation*,
§ 27.71 (4th ed. 2004)................................................................................... 13

Newberg on Class Actions
§ 14:6 (4th Ed. 2002)............................................................................... 10, 11

Theodore Eisenberg & Geoffrey P. Miller,
*Attorneys' Fees and Expenses in Class Action Settlements*: 1993-
2008 (2009)..................................................................................................... 11

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

NOTICE IS HEREBY GIVEN that on June 26, 2014, at 10:00 a.m., or as soon as the matter may be heard, in the Courtroom of the Honorable Fernando M. Olguin of the Central District of California, located at 312 North Spring Street, Los Angeles, California, Courtroom 22, 5th Floor, Class Counsel will, and hereby do, move for an Order awarding the following from the common Settlement Fund: (1) attorneys' fees and costs in the amount of $258,750, which is 25% of the $1,035,000 common fund created for the Class (with no additional payment of Class Counsel's costs, which total $21,140.96); and (2) Service Awards to the Class Representatives of $2,000 each.

As discussed in the accompanying memorandum, the requested awards are fair, reasonable, and justified under applicable law.  This motion is based upon this notice, the attached memorandum of points and authorities, the accompanying declarations of Daniel M. Hutchinson and Matthew R. Wilson, and the exhibits thereto, and other papers filed in support of preliminary and final approval of the Settlement, any oral argument that is held regarding this motion, the complete record in this litigation and such other matters as the Court may consider.[1]

---

[1] Consistent with *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010), and best practices, a copy of this brief will be uploaded to the settlement website, www.CMSTCPASettlement.com.  Class counsel have filed this brief well in advance of the June 26, 2014, hearing so that it can be made available to Class Members prior to the objection and claims deadline.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Counsel for Plaintiffs ("Class Counsel") respectfully move the Court for an award of attorneys' fees and costs from the Settlement Fund[2] in the total amount of $258,750, which is 25% of the common fund created for the Class, *inclusive of* costs (Class Counsel seek reimbursement of their costs—which amount to $21,140.96—out of the total amount requested and not in addition to it).  Class Counsel also respectfully move the Court for an award of modest Service Awards to each of the two Named Plaintiffs in the amount of $2,000 each, for a total of $4,000, out of the Settlement Fund.

In common fund cases like this, the Ninth Circuit's benchmark for attorneys' fees is 25% of the fund created for the benefit of the Class, *plus* recovery of costs. *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1049 (9th Cir. 2002).  Here, Class Counsel seek fees below that benchmark, because they request 25% of the Fund inclusive of, and not in addition to, payment of their costs.  Class Counsel respectfully submit that there is no reason to deviate from that benchmark here. Class Counsel's fee request is well within the range commonly awarded in comparable cases and is well-justified here, particularly taking into account the value of the prospective practice changes undertaken by Carrington Mortgage Services, LLC ("Carrington" or "Defendant").  The Ninth Circuit has held that the value of settlements should be enhanced for purposes of fee analyses where there are significant "nonmonetary benefits conferred by the litigation." *See id.*  Yet Class Counsel seek no such additional valuation here, despite the prospective practice changes in Carrington's TCPA-related conduct, which put a stop to the calls that form the basis for this litigation, and which are a direct result of the litigation.  Class Counsel's request is also supported by a lodestar cross-check, if

---

[2] Capitalized terms in this memorandum shall have the same meaning as specified in the Settlement Agreement.

1169188.3

the Court chooses to perform such an optional cross-check.  That cross-check reveals that the fee amount requested by Class Counsel would result in a "fractional multiplier"[3] of 0.79, which is well *below* the range for such multipliers established by the Ninth Circuit when costs are *not* subsumed within the attorneys' fee award, as they are here.  *Id.* at 1051 & n.6.

Class Counsel respectfully submit that their fee request is appropriate in light of the extraordinary result achieved for the Class, which includes prospective practice changes designed to stop the automated calls or texts to cell phones that are the entire basis for this litigation.  The Settlement requires Carrington to pay $1,035,000 into a Settlement Fund, out of which eligible Class Members who file qualified claims will receive a cash payment.  In light of this strong result, and for the reasons discussed below, Class Counsel respectfully request that the Court grant their fee request in full, and approve the Named Plaintiff service awards.

## II.  BACKGROUND

### A.  The Settlement Represents an Outstanding Result for the Class.

The Settlement achieved by Class Counsel provides both core prospective practice changes and significant monetary relief for the Class.

#### 1.  The Prospective Changes Benefitting the Class.

The conduct driving this (and most) TCPA litigation is the allegation that the defendant (here Carrington) made harassing, repeated, and intrusive autodialed and/or prerecorded calls or texts to consumers' cell phones without prior express consent to do so.  Time and again Class Counsel hear from class members in this and similar cases that the single most important thing to them is that such calls stop.  Thus, the primary focus of the Settlement is Carrington's prospective practice changes.  Specifically, the parties have employed a belt-and-suspenders approach to addressing these automated calls.

---

[3] That is, the fee award would be a fraction of the total lodestar incurred by Class Counsel.

1   First, Carrington has developed and implemented significant enhancements
2   to its servicing systems which are designed to prevent the calling of a cell phone
3   unless a loan servicing record is systematically coded to reflect the borrower's prior
4   express consent to call his/her cell phone.  Agreement (Dkt. 75-1) ¶ 4.01(i).  Class
5   Counsel have been investigating and confirming through discovery that Carrington
6   will implement these procedures by no later than 100 days after the Effective Date
7   of this Settlement.  *See id.*

8   Second, Class Members have the ability to make the automated calls stop by
9   way of filling out a simple form.  The Settlement provides that, for Class Members
10  who execute a valid and timely request ("Revocation Request"), Carrington must
11  not make use of, nor knowingly authorize anyone acting on its behalf to make use
12  of, an automatic telephone dialing system and/or an artificial or prerecorded voice,
13  to call Class Members' cell phones or to send text messages to their cell phones.
14  Agreement ¶ 4.01(ii).  Through the Settlement Website, Class Members have been
15  able to submit the Revocation Request simply by checking a box and providing
16  their current cell phone number.  *Id*. ¶ 4.01(iii).  As an alternative, Class Members
17  may sign and return a one-page "hard copy" Revocation Request to the Claims
18  Administrator.  *Id.*

19  While Class Counsel have not attempted to monetize the dollar value of this
20  prospective relief to Class Members, based on Class Counsel's investigation and
21  discussions with Class Members, Class Counsel know that this relief was a key goal
22  of Class Members as it will prevent them from being subjected to the unwanted
23  autodialed and/or prerecorded calls that are the entire basis for this litigation

24  ## 2.  The Common Settlement Fund Achieved for the Class.

25  In addition to the core prospective relief, the Settlement also provides that
26  Carrington will pay $1,035,000 into a Settlement Fund.  Agreement ¶ 4.02.  From
27  this Fund, Class Members may make a claim for a cash payment.  *Id.* ¶ 4.03.  The
28  amount of each Class Member's cash payment will be based on a *pro rata*

distribution subject only to the number of valid and timely claims and to certain credits.[4]  *Id.* ¶ 4.04.  Class Counsel estimated that the awards will be in the range of $70 to $140 after deductions for the requested attorneys' fees and costs, the requested service awards to the Named Plaintiffs, and the costs of notice and claims administration.  To receive a cash payment, Class Members need only complete a simple, one-page claim form and provide it to the Claims Administrator via the Internet site or by mail.  *Id.* § 9.02.  Class Members have 90 days from the Settlement Notice Date—*i.e.* 105 days from the Preliminary Approval Order—to submit their claim forms or to submit written requests to be excluded from or opt out of the Class.  Order Certifying Class Action, Preliminarily Approving Class Action Settlement and Class Notice, and Setting Final Fairness Hearing, (Dkt. No. 77), ¶ 10.  The Settlement achieved by Class Counsel therefore provides exceptional monetary relief.

> **B.**    **Class Counsel Undertook Considerable Risk in Prosecuting this Action.**

This matter has required Class Counsel to spend time on this litigation that could have been spent on other matters.  Moreover, because Class Counsel undertook representation of this matter on a pure contingency-fee basis, they shouldered the risk of expending substantial costs and time in litigating the action without any monetary gain in the event of an adverse judgment.[5]

This action was especially risky given the various defenses potentially

---

[4] Specifically, in calculating a Class Member's Settlement Award, Carrington shall have the option to credit against the amount payable to any Settlement Class Member who makes a valid and timely Claim an amount equal to any fees legitimately owed by that Class Member to Carrington, including late payment fees or fees for insufficient funds but excluding amounts of principal and interest owed on the Class Member's mortgage.  *Id.* ¶ 4.04.

[5] Declaration of Daniel M. Hutchinson in Support of Plaintiffs' Motion for Attorneys' Fees and Costs["Hutchinson Decl."], ¶¶21-23, ; Declaration of Matthew R. Wilson in Support of Plaintiffs' Motion for Attorneys' Fees ["Wilson Decl."], ¶¶7-8.

1    available to Carrington.  Class Members face the factual defense of consent, as

2    Carrington argues that the majority of them provided their cell phone numbers

3    either on mortgage applications or through subsequent dealings with Carrington.

4    To recover under the TCPA, Plaintiffs would need to convince the Court to adopt

5    their view that the FCC has clarified that "prior express consent" can only being

6    given during "the transaction that resulted in the debt owed"; *i.e.* during the opening

7    of Class Members' mortgage accounts.  The Court could instead have adopted

8    Carrington's view that consent may be given at any time and in any manner before

9    the call was placed.

10        If the Court adopted Carrington's view regarding consent, Class Members

11   would also face a potential class certification problem.  Courts are divided as to

12   whether such consent issues predominate over common questions in TCPA cases,

13   depending on the circumstances of the case.  *Compare Meyer v. Portfolio Recovery*

14   *Associates*, 707 F.3d 1036, 1042 (9th Cir. 2012) (upholding class certification) *with*

15   *Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 328 (5th Cir. 2008) (reversing

16   class certification).  At the time of Settlement, Class Counsel had fully explored

17   these issues by drafting, but not yet filing, their motion for class certification.

18   Hutchinson Decl., ¶ 19.

19        Moreover, at least some courts view awards of aggregate, statutory damages

20   with skepticism and reduce such awards—even after a plaintiff has prevailed on the

21   merits—on due process grounds.  *See, e.g., Parker v. Time Warner Entm't Co.,*

22   *L.P.*, 331 F.3d 13, 22 (2d Cir. N.Y. 2003) ("[T]he potential for a devastatingly large

23   damages award, out of all reasonable proportion to the actual harm suffered by

24   members of the plaintiff class, may raise due process issues."); *In re Trans Union*

25   *Corp. Privacy Litig.*, 211 F.R.D. 328, 350-351 (N.D. Ill. 2002) (declining to certify

26   class where it "could result in statutory minimum damages of over $19 billion,

27   which is grossly disproportionate to any actual damage").

28        Finally, there is the risk of losing a jury trial.  And, even if Plaintiffs did

1  prevail, any recovery could be delayed for years by an appeal.  The Settlement

2  provides substantial relief to Class Members without further delay.

3        **C.**      **Class Counsel Minimized Duplicative Work.**

4        Although Class Counsel seek fees based on a percentage-of-the-fund and not

5  a lodestar analysis, they nonetheless worked closely and in cooperation with one

6  another to divide tasks, ensure efficient case management, and prevent duplication

7  of efforts.  By assigning specific tasks among firms, they were able to avoid

8  duplicating or replicating work.  For example, counsel for the two firms split

9  primary responsibility for drafting briefs relating to Carrington's motion to dismiss,

10  Plaintiffs' discovery motion, Plaintiffs' motion for class certification, and

11  Plaintiffs' motions for preliminary settlement approval.[6]

12        For the purposes of the lodestar cross-check, Class Counsel has also carefully

13  reviewed their firms' internal time records and deleted entries for duplicate work.

14  For example, Class Counsel reduced or eliminated time reported where necessary to

15  ensure that Class Counsel are not seeking reimbursement for unnecessary

16  duplication of efforts.  In addition, Class Counsel deleted all time billed by

17  attorneys and staff who contributed only minimal time to prosecuting the litigation.[7]

18  **III.**      **ARGUMENT AND AUTHORITY**

19        **A.**      **The Requested Fee Award is Fair, Reasonable, and Justified.**

20        Class Counsel seek a total award of attorneys' fees and costs of $258,750, or

21  25% of the Settlement Fund of $1,035,000 (without accounting for the value of

22  Settlement's prospective practice changes).  Class Counsel are not seeking

23  additional payment of their litigation expenses on top of this requested fee award,

24  but rather are seeking those expenses as part of the total amount requested.  After

25  subtracting class counsel's expenses of $21,140.96,[8] Class Counsel are, in actuality,

26

27  [6] Hutchinson Decl., ¶ 37; Wilson Decl., ¶¶ 17, 21.

28  [7] Hutchinson Decl., ¶ 36; Wilson Decl., ¶20.
    [8] *See* Hutchinson Decl., ¶ 29; Wilson Decl., ¶¶ 12-13.

seeking attorneys' fees amounting to $237,609.04—less than 25% of the Settlement Fund.

"Attorneys' fees provisions included in proposed class action settlement agreements are, like every other aspect of such agreements, subject to the determination whether the settlement is 'fundamentally fair, adequate, and reasonable.'" *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir 2003) (quoting Fed. R. Civ. P. 23(e)). The "common fund" doctrine applies where, as here, a litigation results in the recovery of a certain and calculable fund on behalf of a group of beneficiaries. The Ninth Circuit and other federal courts have long recognized that when counsel's efforts result in the creation of a common fund that benefits plaintiffs and unnamed class members, counsel have an equitable right to be compensated from that fund for their successful efforts in creating it. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("lawyer who recovers a common fund…is entitled to a reasonable attorney's fee from the fund as a whole"); *Staton*, 327 F.3d at 967 (quoting *Boeing*); *In re Washington Pub. Power Supply System Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("those who benefit in the creation of a fund should share the wealth with the lawyers whose skill and effort helped create it").

In common fund cases, as opposed to cases analyzing fees under a fee-shifting provision, courts within the Ninth Circuit have discretion to use one of two methods to determine whether the request is reasonable: (1) percentage-of-the-fund; or (2) lodestar plus a risk multiplier. *Staton,* 327 F.3d at 967-68; *see also In re Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010). "Though courts have discretion to choose which calculation method they use, their discretion must be exercised so as to achieve a reasonable result." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). Class Counsel's request for fees is reasonable under—and warrants application of—the percentage-of-the-fund analysis. The reasonableness of Class Counsel's fee award request is confirmed by

1  a lodestar cross-check, which courts in the Ninth Circuit may choose to employ in

2  their discretion.

3       1.   **The Requested Fee is Presumptively Reasonable because it**

4            **Resulted from Arm's Length Negotiations.**

5       As the United States Supreme Court has explained: "A request for attorney's

6  fees should not result in a second major litigation.  Ideally, of course, litigants will

7  settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  While

8  the Court must perform its own evaluation to verify that the requested fees are

9  reasonable and not the product of collusion, it should give weight to the judgment

10  of the parties and their counsel where, as here, the fees were agreed to through

11  arm's length negotiations after the parties agreed on the other key deal terms.  *See,*

12  *e.g., In re Apple Computer, Inc. Derivative Litig.,* No. C 06-4128 JF (HRL), 2008

13  U.S. Dist. LEXIS 108195, at *12 (N.D. Cal. Nov. 5, 2008).

14       Here, Class Counsel negotiated with Carrington to reach an agreed-upon fee

15  amount that they regarded as reasonable based on, *inter alia*, the benefits achieved

16  for the Class and applicable legal principles, and did so only *after* they reached

17  agreement on the other key deal terms.  Hutchinson Decl., ¶ 18.  That fact serves as

18  "independent confirmation that the fee was not the result of collusion or a sacrifice

19  of the interests of the class."  *Hanlon v. Chrysler Corp*, 150 F.3d 1011, 1029 (9th

20  Cir. 1998).  Under these circumstances, the Court should give weight to the

21  judgment of the parties and their counsel regarding reasonable fees.

22       2.   **The Court Should Apply the Percentage-of-the-Fund**

23            **Method.**

24       The fairest and most efficient way to calculate a reasonable fee where, as

25  here, contingency fee litigation has produced a common fund is by awarding class

26  counsel a percentage of the total fund.

27       There is an important policy reason behind choosing to apply the percentage-

28  of-the-fund method, rather than the lodestar method, in common fund cases such as

- 9 -

PLTFS' MOT. AND MEM. ISO MOT. FOR ATTYS'
FEES AND COSTS AND FOR SERVICE AWARDS
CASE NO. SACV 12-02016 FMO (ANX)

this one:

> Unlike the lodestar method which can encourage class
> counsel to devote unnecessary hours to generate a
> substantial fee, under the [percentage-of-the-fund]
> method, the more the attorney succeeds in recovering
> money for the client, and the fewer legal hours expended
> to reach that result, the higher dollar amount of fee the
> lawyer earns.  Thus, one of the primary advantages of the
> [percentage-of-the-fund] method is that it is thought to
> equate the interests of class counsel with those of the class
> members and encourage class counsel to prosecute the
> case in an efficient manner.

Newberg on Class Actions § 14:6 (4th Ed. 2002).  The percentage-of-the-fund method comports with the legal marketplace, where counsel's success is frequently measured in terms of the results counsel has achieved.  *See Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269 (D.C. Cir. 1993) (in common fund cases "the monetary amount of the victory is often the true measure of [counsel's] success").  By assessing the amount of the fee in terms of the amount of the benefit conferred on the class, the percentage method "more accurately reflects the economics of litigation practice" which, "given the uncertainties and hazards of litigation, must necessarily be result-oriented."  *Id.*  Moreover, it most effectively aligns the incentives of the class members and their counsel and thus encourages counsel to spend their time efficiently, and to focus on maximizing the relief available to the class, rather than their own lodestar hours.  *Vizcaino*, 290 F.3d at 1050 n.5; *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1375 (N.D. Cal. 1989).  Finally, it comports with the established practice in the private legal market to reward attorneys for taking the risk of nonpayment by paying them a premium for successfully resolving contingency fee cases.  *See In re Washington*, 19 F.3d at

1299; *see also* Newberg on Class Actions § 14:6 (4th Ed. 2002).  "[I]f this 'bonus' methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing."  *In re Washington*, 19 F.3d at 1300 (quoting *Behrens v. Wometco Enter., Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988), aff'd, 899 F.2d 21 (11th Cir. 1990)).

For these reasons, the percentage-of-the-fund method is applied more frequently than the lodestar plus multiplier method in common fund cases in the Ninth Circuit.  *See, e.g., In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007) ("[U]se of the percentage method in common fund cases appears to be dominant."); *Vizcaino*, 290 F.3d at 1050 ("[T]he primary basis of the fee award remains the percentage method."); *Lopez v. Youngblood*, No. CV-F-07-0474 DLB, 2011 U.S. Dist. LEXIS 99289, at *31 (E.D. Cal. Sept. 1, 2011) ("[W]hile the Court has discretion to use either a percentage of the fund or a lodestar approach in compensating class counsel . . . the percentage of the fund is the typical method of calculating class fund fees."); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1374-78 (N.D. Cal. 1989) (discussing advantages of percentage of recovery method in common fund cases).

Further confirming courts' preference for awarding attorneys' fees in class cases on a percentage-of-the-fund-basis, an empirical study based on eighteen years of published opinions on settlements in 689 common fund class action and shareholder derivative settlements in both state and federal courts found the following: (1) 80% of cases employed the percentage-of-the-recovery method and (2) the number of courts employing the lodestar method has declined over time, from 13.6 percent from 1993-2002 to 9.6% from 2003 to 2008.  *See* Theodore Eisenberg & Geoffrey P. Miller, *Attorneys' Fees and Expenses in Class Action Settlements*: 1993-2008, 19 (2009).[9]  By contrast, courts rely on the lodestar method

---

[9] *Available at* http://www.uscourts.gov/uscourts/RulesAndPolicies/rules/

1    under circumstances not applicable here; *i.e.*, where "there is no way to gauge the

2    net value of the settlement or of any percentage thereof." *Hanlon*, 150 F.3d at

3    1029.

4        For these reasons, Class Counsel submit that the Court should use the

5    standard percentage-of-the-fund approach to determining the award of attorneys'

6    fees in this action.

7        **3.    Class Counsel's Fee Request is Warranted Under the**

8        **Percentage-of-the-Fund Method.**

9        Class Counsel's request for attorneys' fees and costs in a total amount of

10   $258,750—less than 25% of the $1,035,000 common fund because it includes

11   costs—is fair and reasonable under the circumstances of this case. In the Ninth

12   Circuit, the "benchmark" percentage fee award is 25% of the common fund, with

13   costs and expenses awarded *on top of* this fee amount. Moreover, courts in this

14   Circuit often award a percentage of the fund that is higher than the 25% benchmark.

15   *Omnivision*, 559 F. Supp. 2d at 1047 ("[I]n most common fund cases, the award

16   exceeds th[e] benchmark."); *see also Vizcaino*, 290 F.3d at 1048-1050 (awarding

17   28%); *Garner v. State Farm*, No. CV 08 1365 CW, 2010 U.S. Dist. LEXIS 49482,

18   at *5-6 (N.D. Cal. Apr. 22, 2010) (awarding 30%); *Knight v. Red Door Salons, Inc.*,

19   No. 08-01520 SC, 2009 U.S. Dist. LEXIS 11149, at *17 (N.D. Cal. Feb. 2, 2009)

20   (same). Based on this authority, and particularly given the existence of prospective

21   relief in the settlement, Class Counsel's request for the benchmark award, with no

22   additional request for reimbursement of their costs and expenses, is conservative.

23       Courts consider a number of factors to determine the appropriate percentage

24   to apply, including: (1) the results achieved; (2) the risk of litigation; (3) the skill

25   required and the quality of work; (4) the contingent nature of the fee; and (5)

26   awards made in similar cases. *Vizcaino*, 290 F.3d at 1048-1050; *Omnivision*, 559

27

28   Duke%20Materials/Library/Theodore%20Eisenberg,%20Geoffrey%20Miller,%20
     Attorneys'%20Fees%20in%20Class%20Actions.pdf.

F. Supp. 2d at 1046.  All of these factors favor approval of the 25% fee award requested here.

### a.     Class Counsel have Obtained an Excellent Result.

The results obtained for the class are generally considered to be the most important factor in determining the appropriate fee award in a common fund case. *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983); *Omnivision*, 559 F. Supp. 2d at 1046; *see also* Federal Judicial Center, *Manual for Complex Litigation*, § 27.71, p.336 (4th ed. 2004) (the "fundamental focus is on the result actually achieved for class members") (citing Fed. R. Civ. P. 23(h) committee note).  Standing alone, this factor supports Class Counsel's fee request.

**Prospective Relief**: Ninth Circuit courts repeatedly have held that where, as here, class counsel achieves significant benefits that are not accounted for in the dollar value of the common settlement fund, the court "should consider the value of [such] relief as a relevant circumstance in determining what percentage of the common fund class counsel should receive as attorneys' fees."  *Staton*, 327 F.3d at 974; *see also Vizcaino*, 290 F.3d at 1049 (affirming enhanced fee award where "the court found that counsel's performance generated benefits beyond the cash settlement fund"); *Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 U.S. Dist. LEXIS 24300, *20 (N.D. Cal. July 18, 1997) (granting fee award of one-third of common fund where settlement provided additional non-monetary relief).

Class Counsel's interviews with Plaintiffs and Class Members revealed that putting a stop to the autodialed and/or prerecorded calls to their cell phones was the primary goal of this litigation.[10]  Carrington's prospective practice changes are designed to achieve this result.  Carrington's new systematic coding will reflect when customers have provided consent to make calls to their cell phones, thereby preventing Carrington from calling the cell phones of customers who do not wish to be called.  *See* Agreement ¶ 4.01(i).  In addition, Class Members may stop all

---

[10] Hutchinson Decl. ¶ 40.

PLTFS' MOT. AND MEM. ISO MOT. FOR ATTYS'
FEES AND COSTS AND FOR SERVICE AWARDS
CASE NO. SACV 12-02016 FMO (ANX)

automated calls to their cellular telephones by providing a simple, one-page Revocation Request Form. *See* Agreement ¶ 4.01(ii). If the value of this benefit were to be taken into consideration, it would effectively "reduce[]the overall percentage of the fees that counsel" seeks. *See Walsh*, 2013 U.S. Dist. LEXIS 176319 at *12 (approving fee request of 30% of the common fund, finding that this request was effectively reduced by the "substantial injunctive relief" obtained through the settlement). Thus, the Settlement's prospective relief supports Class Counsel's fee request.

**Monetary Relief**: The Settlement requires Carrington to pay $1,035,000 into a common Settlement Fund, out of which Class Member claimants will receive their *pro rata* share of cash payments. Agreement ¶ 4.02. While the precise amount of individual payments cannot yet be determined, Class Counsel estimated that claimants will receive an average recovery of between $70 to $140. The Settlement achieved by Class Counsel therefore provides significant monetary relief to the Class Members, particularly here, where the damages are purely statutory damages, rather than "actual" damages.

The fact that the $1,035,000 fund does not constitute the full measure of statutory damages potentially available to the Class does not merit any deviation from the 25% benchmark. "The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators" because "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Linney*, 151 F.3d at 1242 (citations omitted); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (settlement of only a fraction of potential recovery fair given nature of claims and facts of case). This is particularly true where, as here, the Settlement was reached at arm's length through protracted negotiations by experienced counsel. It was also reached after extensive litigation and motion practice, and after taking into consideration the risks involved in the actions. Thus, the requested 25% award

1    (subsuming Class Counsel's costs) is reasonable.

2                **b.**      **The Risks of Litigation Supports the Requested Fee.**

3          "The risk that further litigation might result in Plaintiffs not recovering at all,

4    particularly a case involving complicated legal issues, is a significant factor in the

5    award of fees." *Omnivision*, 559 F. Supp. 2d at 1046-47; *see also Vizcaino*, 290

6    F.3d at 1048 (risk of dismissal or loss on class certification is relevant to evaluation

7    of a requested fee).

8          Here, there was a risk that the Court would decline to adopt Class Counsel's

9    view that the FCC has clarified that "prior express consent" can only being given

10   during "the transaction that resulted in the debt owed"; *i.e.* during the opening of

11   Class Members' Carrington accounts.  The Court could instead have adopted

12   Carrington's view that consent may be given at any time and in any manner (e.g.

13   orally or in writing) before the call was placed.

14         Had the Court adopted Carrington's view, there was a risk that the Court

15   would deny a motion to certify a class.  Carrington consistently argued that class

16   certification would be inappropriate in these actions due to the question of whether

17   Class Members consented to the calls at issue.  As noted above, courts are divided

18   as to whether such consent issues predominate over common questions in TCPA

19   cases, depending on the circumstances of the case.  *Supra* at 6.

20         Finally, there was the ever-present risk of losing a jury trial.  And, even if

21   Plaintiffs did prevail, any recovery could be delayed for years by an appeal.  Given

22   all of the above risks, all of which were present when Class Counsel undertook the

23   case on a contingency fee basis, Class Counsel's fee award request is reasonable.

24               **c.**      **The Skill Required and Quality of Work Performed**

25                      **Supports the Requested Fee.**

26         The "prosecution and management of a complex national class action

27   requires unique legal skills and abilities" that are to be considered when evaluating

28   fees. *Omnivision*, 559 F. Supp. 2d at 1047 (citation omitted).  Class Counsel are

experienced class action litigators who have successfully prosecuted complex consumer cases, and who have become particularly skilled and experienced in litigating TCPA class actions.[11]   Class Counsel performed significant factual investigation prior to bringing this action; engaged in motions practice including opposing a motion to dismiss, moving to compel discovery, and briefing class certification; engaged in written discovery and a deposition; participated in protracted and hard-fought negotiations with Carrington; and efficiently and vigorously negotiated a $1,035,000 Settlement with prospective practice changes that are important to Plaintiffs and Class Members.[12]   Class Counsel's skill and expertise, reflected in the prompt and significant Settlement, support the fee request.

### d.   Class Counsel's Undertaking of the Actions on a Contingency-Fee Basis Supports the Requested Fee.

The Ninth Circuit has long recognized that the public interest is served by rewarding attorneys who assume representation on a contingent basis to compensate them for the risk that they might be paid nothing at all for their work. *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d at 1299 ("Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose."); *Vizcaino*, 290 F.3d at 1051 (courts reward successful class counsel in contingency cases "for taking the risk of nonpayment by paying them a premium over their normal hourly rates").

Class Counsel prosecuted this matter on a purely contingent basis, agreeing to advance all necessary expenses and knowing that they would only receive a fee if there was a recovery.  Class Counsel have spent considerable outlays of time and

---

[11] Hutchinson Decl., ¶ 2, 5(a)-(f); Wilson Decl., ¶¶ 1, 4(a)-(j).

[12] Hutchinson Decl., ¶¶ 16-20; Wilson Decl., ¶17.

- 16 -   PLTFS' MOT. AND MEM. ISO MOT. FOR ATTYS' FEES AND COSTS AND FOR SERVICE AWARDS CASE NO. SACV 12-02016 FMO (ANX)

money by, among other things, (1) investigating these actions; (2) conducting legal research and briefing an opposition to Carrington's motion to dismiss, discovery motion, and motion for class certification; (3) conducting discovery, including a 30(b)(6) deposition of a Carrington employee; (4) negotiating the Settlement; (5) administering the Settlement; and (6) responding to Class Member inquiries.[13] Class Counsel expended these resources despite the real risk that they would never be compensated at all.  Class Counsel's "substantial outlay, when there is a risk that that none of it will be recovered, further supports the award of the requested fees" here.  *Omnivision*, 559 F. Supp. 2d at 1047.

Further, Class Counsel devoted the appropriate amount of time, resources, and energy necessary to handle this matter.  Such devotion to this matter in lieu of other opportunities further supports the requested fee award.

> **e.   The Requested Fee Comports with Fees Awarded in Similar Actions.**

The fee requested is well within the range commonly awarded in TCPA class actions.  *See, e.g., Bellows v. NCO Financial Systems, Inc.*, No. 07-CV-1413 W (AJB), 2009 U.S. Dist. LEXIS 273, at *4-5 (S.D. Cal. Jan 5, 2009) (awarding 31.6% of TCPA settlement fund); *Adams v. AllianceOne Receivables Mgmt., Inc.*, No. 3:08-cv-00248-JAH-WVG (S.D. Cal. Sept. 28, 2012) (awarding 30% of the TCPA settlement fund) (Exh. B to Hutchinson Decl.); *Grannan v. Alliant Law Group, P.C.*, No. C10-02803 HRL, 2012 U.S. Dist. LEXIS 8101, at *28-30 (N.D. Cal. Jan. 24, 2012) (awarding 25% of TCPA settlement fund); *Satterfield v. Simon & Schuster, Inc. et al.*, No. 06-cv-2893 (N.D. Cal. Aug. 6, 2010) (Exh. C to Hutchinson Decl.) (same).  Courts have done so in TCPA actions that involved significantly less litigation than that involved in this action.  *Lo v. Oxnard European Motors, LLC,* No. 11CV1009 JLS, 2012 U.S. Dist. LEXIS 73983, at *9-10 (S.D. Cal. May 29, 2012) (awarding 25% fee request where TCPA class action

---

[13] Hutchinson Decl., ¶¶ 24-27; Wilson Decl., ¶17.

1    settled two months after commencement of the lawsuit).

2         In fact, Class Counsel's requested fee award is *less than* the typical fee often

3    awarded in class actions.  *See, e.g., Omnivision*, 559 F. Supp. 2d at 1047 ("in most

4    common fund cases, the award exceeds that [25%] benchmark.");  *In re Mego*, 213

5    F.3d at 457, 463 (9th Cir. 2000) (affirming fee award of one third of common

6    fund);  *Knight*, 2009 U.S. Dist. LEXIS 11149 at *18-*19 (awarding 30% fee);  *In re*

7    *Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.,* No. 02-ML-1475-DT(RCx),

8    2005 U.S. Dist. LEXIS 13627, at *29 (C.D. Cal. June 10, 2005) (awarding one-

9    third of fund);  *In re Public Service Co.,* No. 91-0536M, 1992 U.S. Dist. LEXIS

10   16326, at *32-33 (S.D. Cal. July 28, 1992) (awarding 33% fee);  *Antonopulos v. N.*

11   *Am. Thoroughbreds, Inc*., No. 87-0979G (CM), 1991 U.S. Dist. LEXIS 12579, at

12   *9 (S.D. Cal. May 6, 1991) (awarding one-third of fund);  *In re M.D.C. Holdings*

13   *Sec. Litig.,* No. CV 89-0090 E (M), 1990 U.S. Dist. LEXIS 15488, at *21, 32 (S.D.

14   Cal. Aug. 30, 1990) (awarding 30% fee where settlement obtained "in a very short

15   amount of time" and finding that class counsel should be rewarded, not penalized,

16   for achieving early success on behalf of the class).

17        In short, Class Counsel's fee request is reasonable and fair under the

18   "percentage of the fund" method.

19            **4.      A Lodestar Plus Multiplier Cross-Check Supports the**

20                    **Requested Fee.**

21        A court applying the percentage-of-the-fund method may use the lodestar

22   method as a "cross-check on the reasonableness of a percentage figure."  *Vizcaino*,

23   290 F.3d at 1050 & n.5.  The cross-check is optional, and Class Counsel submit that

24   its use is unnecessary here.  *See Glass v. UBS Fin. Servs.,* No. C-06-4068 MMC,

25   2007 U.S. Dist. LEXIS 8476, at *48 (N.D. Cal. Jan. 26, 2007) (finding that "where

26   the early settlement resulted in a significant benefit to the class," there is no need

27   "to conduct a lodestar cross-check").  If the Court chooses to perform such a cross-

28   check here, however, it confirms that a 25% fee award is reasonable.

1    The first step in the lodestar-multiplier approach is to multiply the number of

2    hours counsel reasonably expended by a reasonable hourly rate. *Hanlon,* 150 F.3d

3    at 1029.  Once this raw lodestar figure is determined, the court may then adjust that

4    figure based upon its consideration of many of the same "enhancement" factors

5    considered in the percentage-of-the-fund analysis, such as: (1) the results obtained;

6    (2) whether the fee is fixed or contingent; (3) the complexity of the issues involved;

7    (4) the preclusion of other employment due to acceptance of the case; and (5) the

8    experience, reputation, and ability of the attorneys. *See Kerr v. Screen Extras*

9    *Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

10                    **a.     Class Counsel's Lodestar is Reasonable.**

11    The accompanying declarations of Class Counsel set forth the hours of work

12    and billing rates used to calculate their lodestar.  As described in those declarations,

13    Class Counsel and their staffs have devoted a total of approximately 724.9 hours to

14    this litigation, and have a total lodestar to date of approximately $325,619.  These

15    amounts do not include the additional time that Class Counsel will spend going

16    forward in seeking approval of, and implementing, the Settlement, including

17    assisting Class Members with claims and overseeing claims administration

18    generally, tasks that can require substantial additional hours not reflected in a

19    multiplier calculated on current lodestar.  Class Counsel's lodestar will grow as

20    they continue to finalize the settlement process and close the litigation.  The claims

21    period will last for several months, and Class Counsel's commitment of time and

22    labor to this case will continue until (and likely beyond) that date.  Class Counsel

23    will continue to assist Class Members with individual inquiries, will oversee the

24    claims resolution process, and will help resolve Class member challenges to the

25    result of their claims submissions.  Judging by previous experiences, these

26    responsibilities will require substantial numbers of hours of work by Class Counsel

27    over the coming months.[14]

28
─────────────────
[14] Hutchinson Decl., ¶ 27; Wilson Decl., ¶ 11.

Class Counsel's time was spent primarily on the following tasks: (1) investigating the claims of the Plaintiffs and Class Members; (2) conducting legal research and briefing an opposition to Carrington's motion to dismiss, discovery motion, and motion for class certification; (3) conducting discovery, including a 30(b)(6) deposition of a Carrington employee; (4) negotiating the Settlement; (5) administering the Settlement; and (6) responding to Class Member inquiries.[15]

Class Counsel's lodestar is reasonable.  Class Counsel prosecuted the claims at issue efficiently and effectively, making every effort to prevent the duplication of work that might have resulted from having multiple firms working on this case. Tasks were reasonably divided among law firms to ensure avoid replicating work.[16] Further, tasks were delegated appropriately among partners, associate attorneys, paralegals, and other staff according to their complexity such that the attorneys with higher billing rates billed time only where necessary.  In addition, Class Counsel's contemporaneous time records were carefully reviewed and duplicative work, as well as *de minimis* time billed by attorneys and staff who had little participation in the actions, was deleted.[17]

Class Counsel's hourly rates are also reasonable.  In assessing the reasonableness of an attorney's hourly rate, courts consider whether the claimed rate is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1994).  Class Counsel here are experienced, highly regarded members of the bar with extensive expertise in the area of class actions and complex litigation involving consumer claims like those at issue here.[18] Class Counsel's customary rates used in calculating the lodestar here have been

---

[15] Hutchinson Decl., ¶¶ 24-27; Wilson Decl., ¶ 17.

[16] Hutchinson Decl., ¶ 37; Wilson Decl., ¶ 21.

[17] Hutchinson Decl., ¶¶ 35-36; Wilson Decl., ¶ 20.

[18] Hutchinson Decl., ¶¶ 2-15; Wilson Decl., ¶¶ 1-6.

approved by courts in this District and other courts.[19]

### b.     No Multiplier Is Sought.

The benchmark 25% fee requested by Class Counsel reflects a fractional multiplier of 0.79 of Class Counsel's combined lodestar.  Courts have approved fee awards resulting in multipliers which are much higher than that requested here. *See, e.g.*, *Vizcaino*, 290 F.3d at 1051 and Appendix (affirming 28% fee award where multiplier equaled 3.65; and citing cases approving multipliers in common fund cases going as high as 19.6); *Steiner v. Am. Broad. Co.*, 248 Fed. Appx. 780, 783 (9th Cir. Cal. 2007) (upholding 25% fee award yielding multiplier of 6.85, finding that it "falls well within the range of multipliers that courts have allowed"); *Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (approving 25% fee award yielding a multiplier of 5.2 and stating that "there is ample authority for such awards resulting in multipliers in this range or higher").

The fact that Class Counsel are requesting below the benchmark should be taken into account in assessing whether the multiplier is reasonable.  *See Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*, No. 03-4578, 2005 U.S. Dist.

---

[19] Hutchinson Decl., ¶¶ 30-34; Wilson Decl., ¶ 16.  *See also Nwabueze v. AT&T Inc.,* No. C 09-01529 SI, 2014 U.S. Dist. LEXIS 11766, at *8 (N.D. Cal. Jan. 29, 2014) ("[T]he Court also finds that the rates requested are within the range of reasonable hourly rates for contingency litigation approved in this District."); *Walsh v. Kindred Healthcare*, No. C 11-00050 JSW, 2013 U.S. Dist. LEXIS 176319, at *9 (N.D. Cal. Dec. 16, 2013) ("The Court concludes Plaintiffs have shown that the requested rates are reasonable."); *Ross v. Trex Co.*, No. 09-cv-00670-JSW, 2013 U.S. Dist. LEXIS 177732, at *4 (N.D. Cal. Dec. 16, 2013) (finding the "reasonable hourly rates of counsel . . . compare favorably to other rates awarded in this judicial district"); *Moore v. Verizon Communs., Inc.*, No. 09-1823 SBA (JSC), 2013 U.S. Dist. LEXIS 170027, at *28 (N.D. Cal. Nov. 27, 2013) ("The Court concludes that the hourly rates for the attorneys who billed time on this case are reasonable given the geographic location and experience of counsel."); *In re AXA Rosenberg Investor Litig.*, No. 11-cv-00536-JSW, Dkt. No. 73 (N.D. Cal. April 2, 2012) (White, J.) ("The Court has also reviewed Lead Counsel's hourly rates and concludes that these rates are appropriate for attorneys in this locality of Lead Counsel's skills and experience."); *Fulford v. Logitech, Inc.*, No. 08-cv-02041 MMC, 2010 U.S. Dist. LEXIS 144437, at *10 (N.D. Cal. Mar. 5, 2010) ("The Court further finds that Plaintiff's Counsels' hourly rates are reasonable for their skill and the work they performed.").

PLTFS' MOT. AND MEM. ISO MOT. FOR ATTYS'
FEES AND COSTS AND FOR SERVICE AWARDS
CASE NO. SACV 12-02016 FMO (ANX)

LEXIS 9705, at*60 (E.D. Pa. May 20, 2005) (approving multiplier of 15.6, noting that the "high lodestar multiplier . . . is neutralized with respect to the reasonableness of a percentage fee award of 20%" of $100 million fund). Indeed, in many cases approving multipliers, the percentage-of-the-fund requested is higher than the benchmark. *See AllianceOne*, No. 3:08-cv-00248-JAH-WVG (S.D. Cal. Sept. 28, 2012) (Exh. B to Hutchinson Decl.) (awarding 30% of the TCPA settlement fund, which amounted to a 3.81 multiplier of class counsel's lodestar, and awarding costs on top of the fee award); *see also Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) (awarding one-third of fund, resulting in "modest multiplier of 4.65"); *Di Giacomo v. Plains All Am. Pipeline*, No. H-99-4137, 2001 U.S. Dist. LEXIS 25532, at *31 (S.D. Tex. Dec. 18, 2001) (awarding 30% of fund, resulting in multiplier of 5.3). Such multipliers, particularly where the percentage of the fee requested is reasonable, reflect the principle that attorneys should not be discouraged from obtaining early victories that benefit the class. *See, e.g., Craft*, F. Supp. 2d at 1123-1127 (awarding 25% of fund, which amounted to 5.2 multiplier, in part because of the numerous drawbacks and disincentives associated with a pure lodestar approach); *see also Lopez*, 2011 U.S. Dist. LEXIS 99289, at *10, 39-43 (citing *Swedish Hosp.*, 1 F.3d at 1266-67) (awarding 28.5% of fund, and finding that a lodestar cross-check is "not a useful reference point").

Here, however, Class Counsel do not seek a fee that is a multiplier of their lodestar at all; they seek a fee that is but a *fraction* of their lodestar. In that light, the fee requested is eminently reasonable.

**B.**   **Class Counsel Are Not Seeking Reimbursement of their Costs on Top of the Fee Award, Although Such Reimbursement Would be Justified.**

Class Counsel are not seeking payment of costs in addition to their recovery of 25% of the Fund, and will instead be reimbursed costs out of that 25%. As such,

there is no need for detailed analysis.  Nonetheless, recovery of those costs would be appropriate in its own right.  "Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit from the settlement."  *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1995) (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-392 (1970)).  To date, Class Counsel have incurred out-of-pocket costs totaling $21,140.96.  This amount includes costs for (1) deposition fees; (2) travel to court hearings and deposition; (3) hard costs such as legal research through LEXIS and Westlaw and Federal Express, postage, and messengering fees; and (4) other costs such as printing, copying, and telephone charges.[20]  These relatively modest out-of-pocket costs were necessary to secure the resolution of this litigation.  *See In re Media Vision*, 913 F. Supp. at 1367-72 (costs related to retention of experts, photocopy costs, travel expenses, postage, telephone costs, computerized legal research fees, and filing fees may be reimbursed).

## C.     The Named Plaintiffs' Service Awards Are Reasonable.

As the Ninth Circuit has recognized, "named plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments."  *Staton*, 327 F.3d at 977; *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (service awards "are fairly typical in class action cases").  Such awards are "intended to compensate class representatives for work done on behalf of the class [and] make up for financial or reputational risk undertaken in bringing the action."  *Id.*  Small incentive awards, such as those requested here, promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits.  The requested modest service awards of $2,000 for each of the two Named Plaintiffs are well justified.

In addition to lending their names to this matter, and thus subjecting themselves to public attention, the Named Plaintiffs were actively engaged in these

---

[20] *See* Hutchinson Decl., ¶¶ 28-29; Wilson Decl., ¶¶ 12-13.

Actions.  Among other things, they (1) provided information to Class Counsel for the complaints and other pleadings; (2) reviewed pleadings and other documents including the complaints; (3) communicated on a regular basis with counsel and kept themselves informed of progress in the litigation and settlement negotiations; (4) reviewed and approved the proposed settlements; and (5) were prepared to provide testimony in depositions.[21]  Their dedication to these actions was notable, particularly given the relatively modest size of their personal financial stakes in this case.  *See Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (awarding $100,000 incentive award in part on the ground that, "[i]n exchange for his participation, Van Vranken will not receive great personal benefit").

Moreover, the amount requested here, $2,000 for each of the two Named Plaintiffs (totaling $4,000, or less than 0.4% of the Settlement Fund), is reasonable and less than amounts frequently awarded in TCPA actions.  *See, e.g., Satterfield*, No. 06-cv-2893 (N.D. Cal. Aug. 6, 2010) (Exh. C to Hutchinson Decl.) (awarding $20,000 to one named plaintiff, and $5,000 each to the other two named plaintiffs, in a TCPA action); *AllianceOne*, No. 3:08-cv-00248-JAH-WVG (S.D. Cal. Sept. 28, 2012) (Exh. B to Hutchinson Decl.) (awarding $5,000 to one named plaintiff, and $2,500 each to the other two named plaintiffs, in a TCPA action).  It is also less than the service awards frequently awarded in other class actions, including those that have settled at similar procedural postures.  *Hopson v. Hanesbrands Inc.,* No. CV-08-0844 EDL, 2009 U.S. Dist. LEXIS 33900, at *27-28 (N.D. Cal. Apr. 3, 2009) (awarding $5,000 incentive payment, constituting 1.25% of the settlement fund, and finding that, "in general, courts have found that $5,000 incentive payments are reasonable") (citations omitted); *Odrick v. UnionBanCal Corp.,* No. C 10-5565 SBA*,* 2012 U.S. Dist. LEXIS 171413, at *11, 18 (N.D. Cal. Dec. 3,

---

[21] *See* Declaration of Vanessa Brown Scott Reese (Dkt. No. 72), ¶¶ 1-5; Declaration of Richard Wannemacher (Dkt. No. 73), ¶¶ 1-5.

PLTFS' MOT. AND MEM. ISO MOT. FOR ATTYS' FEES AND COSTS AND FOR SERVICE AWARDS CASE NO. SACV 12-02016 FMO (ANX)

2012) (awarding $5,000 to named plaintiff where "the settlement was reached at the early stages of litigation"); *Fitzgerald v. City of Los Angeles,* No. CV 03-01876 NM, 2003 U.S. Dist. LEXIS 27382, at *9 (C.D. Cal. Dec. 8, 2003) (awarding $3,500 each to class representatives in early settlement case).

Accordingly, Class Counsel respectfully request the Court to award service awards of $2,000 each to the Named Plaintiffs.

**IV.    CONCLUSION**

For the foregoing reasons, Class Counsel respectfully request that the Court grant Plaintiffs' motion for an award from the Settlement Fund of attorneys' fees and costs in the total amount of $258,750 and service awards in the amount of $2,000 each to the two Class Representatives, for a total of $4,000.

Dated:  April 9, 2013                    By: */s/ Daniel M. Hutchinson*
                                                    Daniel M. Hutchinson

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Daniel M. Hutchinson (State Bar No. 239458)
Email: dhutchinson@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Jonathan D. Selbin (State Bar No. 170222)
Email: jselbin@lchb.com
Douglas I. Cuthbertson
(admitted *pro hac vice*)
Email: dcuthbertson@lchb.com
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEYER WILSON CO., LPA
Matthew R. Wilson
(State Bar No. 290743)
Email: mwilson@meyerwilson.com
1320 Dublin Road, Ste. 100
Columbus, OH 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066

*Attorneys for Plaintiffs and the Class*

- 26 -