**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RICHARD WANNEMACHER, et al. | Case No. SA CV 12-2016 FMO (ANx) |
| Plaintiffs, | |
| v. | **ORDER RE: FINAL APPROVAL OF CLASS ACTION SETTLEMENT; APPROVAL OF ATTORNEY'S FEES, COSTS, & SERVICE AWARDS** |
| CARRINGTON MORTGAGE SERVICES, LLC, | |
| Defendant. | |

Having reviewed and considered plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement ("Settlement Motion") and Motion for Attorneys' Fees and Costs and for Service Awards to the Class Representatives ("Fees Motion"), and the oral argument presented during the final fairness hearing held on June 26, 2014, the court concludes as follows.

## INTRODUCTION

Plaintiffs Richard Wannemacher ("Wannemacher") and Vanessa Brown Reese ("Reese") (collectively, "plaintiffs" or "class representatives") filed this class action, individually and on behalf of others similarly situated, against defendant Carrington Mortgage Services, LLC ("defendant") on November 19, 2012. Plaintiffs filed the operative Second Amended Complaint ("SAC") on August 15, 2013, alleging that defendant violated the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, et seq. ("TCPA"), by "negligently, knowingly, and/or willfully contacting Plaintiffs and Class Members on their cellular telephones without their prior express consent" "for non-emergency purposes via an 'automatic telephone dialing system[.]'" (SAC at ¶ 1). Plaintiffs seek

injunctive relief and statutory damages. (See id. at ¶ 2).

On February 20, 2014, the court granted preliminary approval of the settlement, appointed Kurtzman Carson Consultants ("KCC") as the claims administrator, and directed KCC to provide notice to the class members. (See Court's Order of February 20, 2014, at 25-26). The court set June 26, 2014, as the date for the Final Approval Hearing. (See id. at 26). At the Final Approval Hearing, the court requested supplemental declarations from the parties. (See Court's Order of June 26, 2014). Accordingly, on July 3, 2014, the parties filed the Supplemental Declaration of Phil Cooper Re: Claims Filed ("Supp. Copper Decl.") and the Declaration of William D. Temko Regarding CAFA Notice ("Temko Decl.").

## BACKGROUND

I.  PLAINTIFFS' CLAIMS.

Plaintiffs and the putative class members are individuals residing within the United States who allege they received unauthorized, automated calls from defendant to their cellular phones regarding the mortgage debt purportedly owed by them. (See SAC at ¶¶ 7, 8 & 62).

Plaintiff Wannemacher alleges that he took out a mortgage loan with New Century Mortgage Corporation in 2005. (See SAC at ¶ 19). On his 2005 mortgage application, Wannemacher provided "his cellular number . . . [as his] 'business phone' in the 'Employment information' section of the application." (Id. at ¶ 32). Wannemacher contends that his loan is now held by Wells Fargo Bank, N.A., as Trustee for Carrington Mortgage Loan Trust (the "Trust"), and serviced by defendant.[1] (See id. at ¶ 20). He asserts that defendant never received his consent to contact him via his cellular phone, (see id. at 33), but defendant nevertheless "repeatedly [called] . . . Wannemacher on his cellular phone with an automated message." (Id. at ¶ 34). He alleges that defendant has, since around 2007, (see id.), made "repeated, harassing calls[] for the last several years," including up to "twice per week . . . during some weeks." (Id. at ¶ 35).

---

[1] Wannemacher also alleges that defendant does not have authority to service his loan because the Trust never properly "acquired rights to enforce the note or mortgage, [and therefore] . . . the Trust never had authority to delegate servicing to Carrington." (SAC at ¶ 30). These allegations, however, are irrelevant for purposes of the instant Settlement Motion.

In 2008, plaintiff Reese took possession of a property which previously belonged to her ex-husband and whose mortgage loan had been placed with New Century Mortgage. (See SAC at ¶¶ 38 & 39). When the property was transferred to Reese, "the servicing rights to the mortgage on the property were likewise transferred to Carrington in or around 2008." (Id. at ¶¶ 39 & 40). Reese did not own a cell phone at the time of the mortgage transfer, and she "did not give Carrington her prior express consent to be called on her cell phone during the transaction that gave rise to her mortgage debt[.]" (Id. at ¶¶ 41 & 42). "In or around 2010, . . . Reese acquired a cell phone" and, even though she believes she never provided the phone number associated with that phone to defendant, in 2011, she "began receiving telephone calls with an automated message on her cell phone from [defendant]." (Id. at ¶¶ 44 & 45). Reese alleges that she "received repeated, harassing calls" from defendant and that, "from early 2011 until November 2012, she was called approximately three times per week . . . during some weeks." (Id. at ¶ 47).

Plaintiffs allege that defendant "has employed an automatic telephone dialing-system" with "an artificial or prerecorded voice . . . to communicate with Plaintiffs on their cellular telephones." (SAC at ¶¶ 50-52) (internal quotation marks omitted). According to plaintiffs, defendant violated the TCPA because it made the calls at issue without plaintiffs' express consent and for non-emergency purposes. (See id. at ¶¶ 57 & 58).

II.     THE SETTLEMENT AGREEMENT.

   A.     Class Definition.

Pursuant to the Settlement Agreement, plaintiffs sought and the court certified, for settlement purposes only, the following class:

> All persons within the United States who, between November 19, 2008, and [February 20, 2014], received a non-emergency telephone call from Carrington to a cellular telephone through the use of an automatic telephone dialing system and/or an artificial or prerecorded voice.

(Declaration of Daniel M. Hutchinson in Support of Plaintiffs' Motion for Preliminary Approval of Settlement Agreement, Exhibit ("Exh.") 1 (Amended Settlement Agreement and Release) ("Settlement Agreement") at ¶ 2.36; Court's Order of February 20, 2104, at 25).

3

B. <u>Settlement Amount and Benefits</u>.

The Settlement Agreement's primary benefit to class members consists of injunctive-type relief requiring defendant to make significant changes to its business practices. (See Settlement Agreement at ¶ 4.01). Specifically, defendant agrees to modify its servicing systems to "prevent the calling of a cell phone unless a loan servicing record is systematically coded to reflect the borrower's prior express consent to call his/her cell phone." (Id. at ¶ 4.01(I)). The Settlement Agreement also provides a form of retroactive injunctive relief allowing class members to submit a "revocation request" to prohibit defendant from using an "automatic telephone dialing system and/or an artificial or prerecorded voice, to call . . . or to send text messages to [their] cellular telephones[.]" (Id. at ¶ 4.01(ii)).

The Settlement Agreement also requires defendant to "pay a cash sum in the total amount of $1,035,000.00[.]" (Settlement Agreement at ¶ 4.02). From the $1.035 million settlement fund, the Settlement Agreement provides for "attorneys' fees and expenses," (id. at ¶ 5.01), class representative service awards of $2,000 each, (see id. at ¶ 5.02), and fees for expenses of the claims administrator not to exceed $100,000.00. (See id. at ¶¶ 7.03 & 7.04). Alternatively, the Settlement Agreement provides that defendant has "the option to offset or credit against [the individual settlement award] . . . an amount equal to any fees legitimately owed by that Class Member to [defendant], including late payment fees or fees for insufficient funds but excluding amounts of principal and interest owed[.]" (Id. at ¶ 4.04).

C. <u>Scope of Release</u>.

Upon final approval of the Settlement Agreement, class members who did not validly opt out of the settlement will release all claims "that arise out of or relate in any way" to the "use of an 'automatic telephone dialing system' or 'artificial or prerecorded voice' to contact or attempt to contact Settlement Class Members . . . from November 19, 2008 to [February 20, 2014.]" (Settlement Agreement at ¶ 14.01).

D. <u>Administration of Claims and Notice to the Class</u>.

Pursuant to the court's order granting preliminary approval of the Settlement Agreement and appointing KCC as the claims administrator, KCC implemented the notice program. (See

4

Settlement Motion at 8; Declaration of Phil Cooper Regarding Notice Procedures ("Cooper Decl.") at ¶ 2). KCC was responsible for, among other things, mailing the postcard class notice ("Notice"), and posting the "formal Question and Answer Notice" ("Q & A Notice"), the Claim Form, Exclusion Request Form, and Revocation Request Form to the settlement website. (See Cooper Decl. at ¶ 3 & Exhs. A-E). "All notices included a Spanish summary and tagline that alerts Spanish-speakers that a translated version of the Detailed Notice is available in Spanish on the Settlement website, or may be obtained by calling the toll-free number." (Id. at ¶ 3). KCC received from defendant the class member list consisting of a computerized list of 100,653 names and addresses of "all individuals who received a non-emergency telephone call from [defendant] to a cellular telephone through the use of an automatic telephone dialing system and/or artificial or prerecorded voice between November 19, 2008, and February 20, 2014." (Id. at ¶ 4). A class member list of 98,346 resulted after KCC updated the list using the National Change of Address system maintained by the U.S. Postal Service and removing duplicative records and "unmailable" addresses. (See id. at ¶¶ 5-6).

On March 7, 2014, KCC mailed the Notice to the 98,346 class members via first class mail. (See Cooper Decl. at ¶ 10). With respect to 8,315 Notices that were returned without forwarding addresses, KCC conducted address searches using various databases and was able to re-mail Notices to 5,691 class members. (See id. at ¶ 12). KCC was unable to determine updated addresses for 2,581 class members. (See id. at ¶ 13).

KCC also established a toll-free number, staffed by personnel who could speak Spanish, to answer questions posed by class members. (See Cooper Decl. at ¶ 7). Additionally, KCC established a settlement-related website, on which settlement-related documents, including the Settlement Agreement, the Court's Order of February 20, 2014, the SAC and Answer, and the Fees Motion, have been posted. (See id. at ¶ 8). The website allows class members to submit electronic Claim Forms, Revocation Request Forms, and Exclusion Request Forms. (See id.). As of May 27, 2014, the website had received 2,301 unique visitors, (see id.), and as of May 29, 2014, the toll-free number had received 1,194 calls, 519 of which involved requests for a "Notice Packet." (Id. at ¶ 14).

KCC received 2,715 Claim Forms, (see Supp. Cooper Decl. at ¶ 10), of which 38 were duplicative, resulting in 2,677 unique claims.[2] (See id.). KCC also received 11 requests for exclusion, (see id. at ¶ 8), and 103 Revocation Requests. (See id. at ¶ 9). No objections were received.[3] (See id. at ¶ 7). After deducting the requested attorney's fees and costs, the class representative service awards, and claims administration costs, the total remaining in the settlement fund will be $694,500, (see id. at ¶ 13), which results in at least $259 for each class member that has submitted a valid Claim Form. (See id. at ¶ 14).

## LEGAL STANDARD

Federal Rule of Civil Procedure 23[4] provides that "the claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The primary concern of [Rule 23(e)] is the protection of th[e] class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." Officers for Justice v. Civil Service Com., 688 F.2d 615, 624 (9th Cir. 1982), cert. denied 459 U.S. 1217 (1983). Whether to approve a class action settlement is "committed to the sound discretion of the trial judge[,]" Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir.), cert. denied, Hoffer v. City of Seattle, 506 U.S. 953 (1992) (internal quotation marks and citation omitted), who must examine the settlement for "overall fairness." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998). Neither district courts nor appellate courts "have the power to delete, modify, or substitute provisions in the negotiated settlement agreement. The settlement must stand or fall in its entirety." Id. (internal quotation marks and citation omitted).

In order to approve a settlement agreement in a class action, the court must conduct a three-step inquiry. First, it must assess whether defendants have met the notice requirements under the CAFA. See 28 U.S.C. § 1715(d). Second, it must determine whether the notice

---

[2] Because 12 of the claims were deficient or could not be matched to the class member list, the total number of unique claims will ultimately fall between 2,665 and 2,677. (See Supp. Cooper Decl. at ¶¶ 11-12).

[3] No objectors appeared at the final fairness hearing held on June 26, 2014.

[4] All "Rule" references are to the Federal Rules of Civil Procedure.

requirements of Rule 23(c)(2)(B) have been satisfied. Finally, it must conduct a hearing to determine whether the settlement agreement is fair, reasonable, and adequate. See Fed. R. Civ. P. 23(e)(2); Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003); Adoma v. Univ. of Phoenix, Inc., 913 F.Supp.2d. 964, 972 (E.D. Cal. 2012) (conducting three-step inquiry).

In determining whether a settlement agreement is fair, adequate, and reasonable, the court must weigh some or all of the following factors: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement." In re Bluetooth Headset Prod. Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011).

However, when "a settlement agreement is negotiated *prior* to formal class certification, consideration of these eight . . . factors alone is not enough to survive appellate review." Bluetooth, 654 F.3d at 946 (emphasis in original). This is so because "[p]rior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement." Id. District courts, therefore, must determine "that the settlement is not the product of collusion among the negotiating parties." Id. at 947 (internal quotation marks omitted). In making that determination, courts should look for signs of collusion, including "(1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded[;]" (2) "when the parties negotiate a clear sailing arrangement providing for the payment of attorneys' fees separate and apart from the class funds[;]" and (3) "when the parties arrange for fees not awarded to revert to defendants rather than added to the class fund[.]" Id. at 947 (quotation marks and citations omitted).

## DISCUSSION

I.  FINAL APPROVAL OF CLASS SETTLEMENT.

   A.  Class Action Fairness Act.

When a settlement is reached in a class action case, the CAFA requires that, "[n]ot later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is

7

participating in the proposed settlement shall serve [notice of the proposed settlement] upon the appropriate State official of each State in which a class member resides and the appropriate Federal official[.]" 28 U.S.C. § 1715(b). The statute provides detailed requirements for the contents of such a notice. See id. The court is precluded from granting final approval of a class action settlement until the CAFA notice requirement is met. "An order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under [28 U.S.C. § 1715(b)]." 28 U.S.C. § 1715(d).

Here, KCC provided the required CAFA notice to the Attorney General of the United States, the Attorneys General of all 50 states and the District of Columbia, and the Attorneys General for the U.S. Territories in American Samoa, Guam, Northern Mariana Islands, Puerto Rico, and the U.S. Virgin Islands. (See Supp. Cooper Decl. at ¶¶ 3-5 & Exh. A ("CAFA Notice"). The cover letter by defendant's counsel advised the recipients to contact him if they had any questions regarding the notice. (See Temko Decl. at ¶ 4; CAFA Notice). Other than a response from the Attorney General of Washington acknowledging receipt of the CAFA Notice, no responses were received by defendant's counsel. (See Temko Decl. at ¶ 4). The court, therefore, finds that defendant has complied with CAFA's notice requirements.

B.  Class Certification.

In its order granting preliminary approval, the court certified the class referenced above pursuant to Rule 23(b)(3). (See Court's Order of February 20, 2014, at 25). Because circumstances have not changed, and for the reasons set forth in its Order of February 20, 2014, the court reconfirms its order certifying the class for settlement purposes under Rule 23(e). See In re Apollo Group Inc. Sec. Litig., 2012 WL 1378677, *4 (D. Ariz. 2012) ("The Court has previously certified, pursuant to Rule 23 of the Federal Rules of Civil Procedure, and hereby reconfirms its order certifying a class.").

C.  Rule 23(c) Notice Requirements.

Class actions brought under Rule 23(b)(3) must satisfy the notice provisions of Rule 23(c)(2), and upon settlement of a certified class, "[t]he court must direct notice in a reasonable

manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2) prescribes the "best notice that is practicable under the circumstances, including individual notice" of particular information. Fed. R. Civ. P. 23(c)(2)(B) (enumerating notice requirements for classes certified under Rule 23(b)(3)).

After undertaking the required examination, the court approved the form of the proposed class notice. (See Court's Order of February 20, 2014, at 22-25). As discussed above, see supra at § II.D., KCC mailed the Notice to class members on March 7, 2014, (see Cooper Decl. at ¶10), and posted the Q & A Notice, the Claim Form, Exclusion Request Form, and Revocation Request Form, and other settlement-related documents, on the settlement-related website. (See id. at ¶¶ 3 & 8). Accordingly, based on its prior findings and the record before it, the court finds that the Notice and the notice process fairly and adequately informs the class members of the nature of the action, the terms of the proposed settlement, the effect of the action and release of claims, their rights to exclude themselves from this action, and their rights to object to the proposed settlement. (See Court's Order of February 20, 2014, at 22-25).

    D.    <u>Whether Class Settlement is Fair, Adequate and Reasonable</u>.

            1.    **The Strength of Plaintiffs' Case, and the Risk, Expense, Complexity, and Duration of Further Litigation.**

In evaluating the strength of the case, the court should assess "objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." Adoma, 913 F.Supp.2d at 975 (internal quotation marks omitted). "In assessing the risk, expense, complexity, and likely duration of further litigation, the court evaluates the time and cost required." Id. at 976.

While plaintiffs believe that their claims have merit, they recognize that they "would face a number of difficult challenges if the litigation were to continue." (Settlement Motion at 13). As the court previously noted, "the merits of plaintiffs' claims largely turned on a 2008 Federal Communications Commission's ('FCC') declaratory ruling providing an 'official interpretation of the governing provisions of the TCPA.'" (Court's Order of February 20, 2014, at 17). According to plaintiffs, the parties disagree regarding the FCC's interpretation of "prior express consent." (See

9

Settlement Motion at 13). Plaintiffs contend that prior express consent "requires that the cell phone number be 'provided during the transaction that resulted in the debt owed,' i.e., during loan 'origination[,]'" (id.), whereas defendant maintains that the cell phone number could be provided "any time during the multi-year life of the loan[,]" (id.), which some or all class members did. (Id.). Plaintiffs recognize that if the court agreed with defendant's position "the amount of recoverable damages could be reduced significantly or eliminated altogether." (Id. at 14); see Arthur v. Sallie Mae, Inc., 2012 WL 4075238, *1 (W.D. Wash. 2012) (granting final approval of TCPA settlement "in part because of the novelty of central issues"). Moreover, if plaintiffs' interpretation of the TCPA were to prevail, defendant would likely appeal, "which would result in substantial delay." (Settlement Motion at 14); see Rose v. Bank of America Corporation, 2014 WL 4273358, *4 (N.D. Cal. 2014) (noting in a TCPA class action that "sheer size of [an] award against [d]efendants . . . would almost certainly be appealed, potentially reversed, and litigation would not be resolved for a significant amount of time"). The court agrees with plaintiffs' position and finds that these factors strongly support a finding that the Settlement Agreement is fair, adequate, and reasonable.

### 2. The Risk of Maintaining Class Action Status Through Trial.

Since plaintiffs had not yet filed a motion for class certification, there was a risk that the class would not be certified. Accordingly, this factor weighs in favor of approving the settlement.

### 3. The Amount Offered in Settlement.

"[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998) (internal quotation marks omitted). The TCPA permits claimants to recover statutory damages in the amount of $500 per violation, and treble damages up to $1,500 per willful violation. See 47 U.S.C. § 227(b)(3). Although the monetary amount that defendant will pay is a fraction of the potential statutory damages and/or treble damages, it is fair, adequate, and reasonable given the difficulty of proving such damages. See Linney, 151 F.3d at 1242 ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.") (internal quotation marks and citation omitted); Adams v. AllianceOne Receivables Mgmt. Inc., No.

08-CV-0248 JAH (WVGx) (S.D. Cal. 2012) (approving $9 million settlement resulting in $40.00 payments to 64,058 class members who returned valid claim forms). Through discovery, the parties recognized that "determining the precise number of calls defendant[] made to each class member is substantially difficult, unduly burdensome, and economically unfeasible to determine." (Court's Order of February 20, 2014, at 17) (internal quotation marks and some capitalization omitted). Moreover, although class members have suffered no out-of-pocket losses or other economic harm, plaintiffs estimate that each class member that has submitted a Claim Form will receive approximately $259 in monetary relief. (See Supp. Cooper Decl. at ¶ 14).

In addition to monetary relief, the settlement "solidifies significant practice changes" aimed at "ending the autodialed and/or prerecorded calls to [class members'] cell phones[,]" which plaintiffs and class members advised "was their key goal." (Settlement Motion at 15; see Declaration of Daniel M. Hutchinson in Support of Class Counsel's Motion for Attorneys' Fees and Costs ("Hutchinson Decl.") at ¶ 40). Pursuant to the Settlement Agreement, defendant has "made changes to their policies and practices to prevent robocalling cell phones unless a loan servicing record is systematically coded to reflect the borrower's prior express consent[.]" (Settlement Motion at 15; Settlement Agreement at ¶ 4.01). Moreover, as the court noted previously, "Defendant's agreement to change its automated call practices should effectively bring finality to this action which the parties have vigorously disputed since its filing. The settlement therefore not only compensates class members for alleged past violations, but also gives due regard to protecting their rights under the TCPA in the future." (Court's Order of February 20, 2014, at 18); see Grant v. Capital Management Services, L.P., 2014 WL 888665, *4 (S.D. Cal. 2014) ("While this settlement does not include monetary relief for the Class, it stops the allegedly unlawful practices, [and] bars Defendant from similar practices in the future[.]"). In short, this factor also weighs in favor of granting final approval.

**4. The Extent of Discovery Completed and Stage of Proceedings.**

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." Nat'l Rural Telecomms Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 528 (C.D. Cal. 2004). "A court is more likely to approve a settlement if most of the discovery is completed

11

1  because it suggests that the parties arrived at a compromise based on a full understanding of the
2  legal and factual issues surrounding the case." Id. at 527 (internal quotation marks and citation
3  omitted). The court previously examined these factors at length and determined "that the
4  settlement was reached through arms-length negotiation[,] (see Court's Order of February 20,
5  2014, at 15), after significant formal and informal discovery. (See id. at 15-16; see also
6  Hutchinson Decl. at ¶ 17). Moreover, "[p]ursuant to the Settlement Agreement, Defendant
7  voluntarily agreed to produce additional confirmatory discovery relevant to the Settlement,
8  including: (1) additional discovery confirming the size of the settlement class, (2) discovery on
9  Defendant's business practice changes, and (3) additional information necessary to reasonably
10 confirm the material information provided to Class Counsel during settlement negotiations and
11 administrative plans and procedures for compliance with the terms of the Settlement."
12 (Hutchinson Decl. at ¶ 20). Accordingly, this factor also warrants approval of the settlement.

### 5. The Experience and Views of Counsel.

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because the parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." Nat'l Rural Telecomms., 221 F.R.D. at 528 (internal quotation marks and citation omitted). Plaintiffs contend that class counsel are "particularly experienced in litigating TCPA claims, and had a keen understanding of the legal and factual issues involved in this case." (Settlement Motion at 16; see Hutchinson Decl. at ¶ 5 & Exh. A (firm resume of Lieff Cabraser Heimann & Bernstein, LLP); Declaration of Matthew R. Wilson in Support of Class Counsel's Motion for Attorneys' Fees and Costs ("Wilson Decl.") at ¶ 4 & Exh. A) (firm resume of Meyer Wilson Co., LPA)). Mr. Hutchinson states that his "practice has focused on a number of nationwide consumer protection class actions." (Hutchinson Decl. at ¶ 5). He provides a list of numerous class action cases where he and his firm have served as counsel. (See id. at ¶¶ 5-9). Mr. Wilson similarly declares that he has "been in the vanguard of the litigation of class action lawsuits under the [TCPA,]" (Wilson Decl. at ¶ 4), and provides the court with a list of "large TCPA class settlements" on which he has or had a lead or active role. (Id.). Based

on class counsel's representations and supporting evidence, the court finds that this factor supports approval of the settlement agreement.

### 6. The Presence of a Government Participant.

There is no government participant in this matter. Accordingly, this factor is not relevant. See, e.g., Wren v. RGIS Inventory Specialists, 2011 WL 1230816, *10, supplemented by 2011 WL 1838562 (N.D. Cal. 2011) (noting that lack of government entity involved in case rendered this factor inapplicable to the analysis).

### 7. The Reaction of Notified Class Members to the Proposed Settlement.

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." Nat'l Rural Telecomms., 221 F.R.D. at 529. Here, KCC received 2,715 Claim Forms, (see Supp. Cooper Decl. at ¶ 10), of which 38 were duplicative, resulting in 2,677 unique claims. (See id.). Only 11 class members requested exclusion, and significantly, there were no objections to the settlement. (See id. at ¶¶ 7-8).

The lack of objections and limited exclusions supports approval of the settlement. See Franco v. Ruiz Food Products, Inc., 2012 WL 5941801, *14 (E.D. Cal. 2012) (finding this factor weighed in favor of approval when only two out of 2,055 class members opted out, representing less than one percent and there were no objections to the settlement); Gong-Chun v. Aetna Inc., 2012 WL 2872788, *16 (E.D. Cal. 2012) (settlement approved when less than two percent of the class members opted out); Barcia v. Contain-A-Way, Inc., 2009 WL 587844, *4 (S.D. Cal. 2009) (finding this factor weighed in favor of approval of settlement when out of the 2,385 class members, there were no objections and only 56 class members opted out).

E. Whether the Settlement is the Product of Collusion.

Because the parties negotiated and reached a settlement prior to formal certification of the classes, the court must ensure that the settlement was not the product of collusion. See Bluetooth, 654 F.3d at 947-48. In granting preliminary approval of the settlement, the court carefully scrutinized the settlement and concluded that "the overall record in this case, evidence that the parties' settlement was reached through arms-length negotiation [and t]here is no

suggestion of collusion or fraud leading to, or taking part in, the settlement negotiations between the parties." (Court's Order of February 20, 2014, at 15). The court based its determination, in part, on the significant formal and informal discovery conducted prior to the negotiations, and because plaintiffs had already drafted a class certification brief. (See id. at 16).

The record further supports the conclusion that the settlement was reached through arms-length negotiation. Prior to exploring settlement, the parties litigated the case for a year, (see Settlement Motion at 5), and engaged in motion practice, including a motion to dismiss, which the court denied, (see Hutchinson Decl. at ¶ 17; Wilson Decl. at ¶ 17), and a motion to compel. (Id.).

With respect to the Bluetooth "signs" of collusion, the court notes that, unlike Bluetooth, where the class received no monetary award, class members here will be receiving monetary relief. (See Settlement Agreement at ¶ 4.02). Moreover, the parties here did not negotiate a "clear sailing" arrangement whereby attorney's fees are to be paid "separate and apart from class funds[.]" See Bluetooth, 654 F.3d at 947. Rather, any award of attorney's fees will be paid from the class funds per the terms of the Settlement Agreement. (See Settlement Agreement at ¶ 5.01). This is explicit not only in the Settlement Agreement, but the class Notice as well. (See Notice). Finally. pursuant to the Settlement Agreement, the entire $1,035,000 million will be distributed, and no funds will revert to defendant. (See Settlement Agreement at ¶ 2.39).

In short, the court finds that the settlement is fair, reasonable, and adequate, and not the product of collusion among the parties.

II.  AWARD OF ATTORNEY'S FEES AND COSTS & SERVICE AWARDS.

A.  Attorney's Fee Award.

The Settlement Agreement provides that "Defendant will not object to any request by Plaintiffs' Counsel for attorneys' fees in an amount not exceeding 25% (twenty-five percent) of the Settlement Fund, nor will it object to any amounts sought for the costs incurred by Plaintiffs' Counsel in litigating the Action." (Settlement Agreement at ¶ 5.01). Through their Fees Motion, class counsel now seek an award of 25% of the gross settlement amount, or $258,750, for attorney's fees and costs. (See Fees Motion at 2). Since the amount they seek – $258,750 – includes $21,140.96 in costs, the attorney's fees sought are actually less than 25% of the

14

settlement fund. (See id. at 7-8; Hutchinson Decl. at ¶ 29; Wilson Decl. at ¶ 13).

Rule 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "Courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." Bluetooth, 654 F.3d at 941. "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." Id. at 942. However, such "discretion must be exercised so as to achieve a reasonable result." Id.

Plaintiffs seek a fee award pursuant to the "percentage-of-the-benefit" method. (See Fees Motion at 9-12). Under the percentage-of-the-fund method, the "court simply awards the attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee." Hanlon, 150 F.3d at 1029. The Ninth Circuit "has established 25% of the common fund as a benchmark award for attorneys fees." Id. The actual percentage, however, varies depending on the facts of each case, but in "most common fund cases, the award exceeds that benchmark." Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482, 491 (E.D. Cal. 2010) (internal quotation marks omitted).

Courts consider the following factors when determining the benchmark percentage to be applied in a given case: (1) the results achieved for the class; (2) the risk of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee; and (5) awards made in similar cases." Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1046 (9th Cir. 2002).

### 1. The Results Obtained for the Class.

"The result achieved is a significant factor to be considered in making a fee award." In re Heritage Bond Litig., 2005 WL 1594403, *19 (C.D. Cal. 2005); see Hensley v. Eckerhart, 461 U.S. 424, 436, 103 S.Ct. 1933, 1941 (1983) ("the most critical factor is the degree of success obtained"). As the court previously found, in addition to monetary relief, the Settlement Agreement provides for significant prospective business practice changes. (See Court's Order of February 20, 2014, at 18). Such non-monetary relief should be considered "as a relevant circumstance in determining what percentage of the common fund class counsel should receive as attorneys'

fees." Staton, 327 F.3d at 974; see also Vizcaino, 290 F.3d at 1049 (upholding fee award where "counsel's performance generated benefits beyond the cash settlement fund"); Wren, 2011 WL 1230826, at *29 ($27,000,000 settlement amount with average award to class members of $207.69; 42% of total settlement awarded as attorneys' fees because, in part, "the results achieved . . . include both monetary and injunctive relief"). Accordingly, this factor weighs in favor of class counsel's fee request.

### 2. The Risk of Litigation.

"The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees." In Re Omnivision Technologies, Inc., 559 F.Supp.2d 1036, 1046-47 (N.D. Cal. 2008). As discussed above, see supra at § I.D.1., here there was a risk that defendant's interpretation of the meaning of "prior express consent" would prevail, which would have undermined plaintiffs' motion for class certification. (See Fees Motion at 15); see also Vizcaino, 290 F.3d at 1048 (risk of dismissal or loss on class certification is relevant to evaluation of a requested fee); Rose, 2014 WL 4273358, at *12 (agreeing "there was a significant risk because the issue of prior express consent is an open question"). And as class counsel recognize, any recovery could be substantially delayed by the appellate process. (See Fees Motion at 15).

### 3. The Skill Required and Quality of Work.

The "prosecution and management of a complex national class action requires unique legal skills and abilities." Omnivision, 559 F.Supp.2d at 1047 (internal quotation marks omitted). As noted above, class counsel are experienced class action counsel with significant experience in prosecuting TCPA cases. (See Hutchinson Decl. at ¶¶ 2 & 5; Wilson Decl. at ¶¶ 1 & 4). This factor weighs in favor of granting the requested fee.

### 4. The Contingent Nature of the Fee.

"The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee." Knight v. Red Door Salons, Inc., 2009 WL 248367, *6 (N.D. Cal. 2009). Here, class counsel took this case

"on a purely contingent basis, agreeing to advance all necessary expenses and knowing that they would only receive a fee if there was a recovery." (Fees Motion at 16; Hutchinson Decl. at ¶ 22; see Wilson Decl. at ¶¶ 7-8). Class counsel devoted time, money, and resources to this matter despite the risk of non-payment and in lieu of other opportunities. (See Fees Motion at 17; Hutchinson Decl. at ¶¶ 21-23). In short, this factor also supports the requested fees.

### 5. Awards Made in Similar Cases.

According to plaintiffs, the requested fee award, is "well within the range commonly awarded in TCPA class actions." (Fees Motion at 17) (citing Grannan v. Alliant Law Group, P.C., 2012 U.S. Dist. LEXIS 8101, *28-30 (N.D. Cal. 2012) (25% of settlement fund) and Lo v. Oxnard European Motors, LLC, 2012 U.S. Dist. LEXIS 73983, *9-10 (S.D. Cal. 2012) (25% of settlement fund where class action settled two months after commencement of lawsuit)). The court agrees that class counsel's requested fee award is well within the range awarded in similar cases, particularly given that the requested fee award is below the 25% benchmark. (See Fees Motion at 7-8 & 18; Hutchinson Decl. at ¶ 29; Wilson Decl. at ¶ 13).

Consideration of the foregoing factors strongly supports class counsel's request for attorney's fees, inclusive of costs, in the amount of 25% of the settlement fund. The court, therefore, is satisfied that a lodestar "cross-check" is not required. See Craft v. City of San Bernardino, 624 F.Supp.2d 1113, 1122 (C.D. Cal. 2008) ("A lodestar cross-check is not required in this circuit, and in some cases is not a useful reference point."). In sum, a fee award of 25% out of the common fund established by the Settlement Agreement is fair and reasonable.

### B. Class Representatives Service Awards.

Pursuant to the Settlement Agreement, plaintiffs request that the court grant a service award of $2,000 to each class representative. (See Fees Motion at 23; Settlement Agreement at ¶ 5.02).

In the Court's Order of February 20, 2014, the court undertook a thorough examination of the fairness and adequacy of the service awards at issue, applying the careful scrutiny required in this Circuit. (See Court's Order of February 20, 2014, at 19-22); see Radcliffe v. Experian Info. Solutions Inc., 715 F.3d 1157, 1163 (9th Cir. 2013) (reversing the district court's class action

1  settlement approval and instructing "district courts to scrutinize carefully the awards so that they
2  do not undermine the adequacy of the class representatives."); Staton, 327 F.3d at 948-49. Based
3  on its review of the record, the court determined "that the incentive awards are warranted based
4  on plaintiffs' efforts to 'protect the interests of the class, the degree to which the class has
5  benefitted from those actions, and the amount of time and effort the plaintiff[s] expended in
6  pursuing the litigation[,]'" (Court's Order of February 20, 2014, at 21), and "do not call into question
7  whether the class representatives received unduly preferential treatment." (Id. at 22). Moreover,
8  no class member has objected to the requested incentive payments. (See Cooper Decl. at ¶ 17).
9  The court therefore concludes the service awards requested by plaintiffs are fair and reasonable,
10 and will be approved.

**This Order is not intended for publication. Nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT:

1. Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement **(Document No. 79)** is **granted** as set forth herein.

2. The court hereby grants final approval to the parties' Amended Settlement Agreement ("Settlement Agreement") **(Document No. 75-1)**. The court finds that the Settlement Agreement is fair, adequate and reasonable, appears to be the product of arm's length and informed negotiations, and treats all members of the class fairly. The parties are ordered to perform their obligations pursuant to, and the settlement fund shall be administered and paid out in accordance with, the terms of the Settlement Agreement and this Order.

3. Plaintiffs' Motion for Attorneys' Fees and Costs and for Service Awards to the Class Representatives **(Document No. 78)** is **granted** as set forth herein.

4. The settlement class is certified under Federal Rule of Civil Procedure 23(c): All members of the class preliminarily approved on February 20, 2014, who did not properly and timely request exclusion pursuant to the procedures specified in the Settlement Agreement.

5. The form, manner, and content of the Class Notice meet the requirements of Federal

Rules of Civil Procedure 23(c)(2).

6. The court affirms the appointment of plaintiffs Richard Wannemacher and Vanessa Brown Reese as Class Representatives.

7. The court affirms the appointment of the law firms Lieff Cabraser Heimann & Bernstein, LLP and Meyer Wilson Co., LPA as class counsel.

8. Plaintiffs Richard Wannemacher and Vanessa Brown Reese shall each be paid a service payment of $2,000, out of the settlement fund, in accordance with the terms of the Settlement Agreement.

9. Class counsel shall be paid $237,609.04 in attorney's fees, and $21,140.96 in costs, out of the settlement fund, in accordance with the terms of the Settlement Agreement.

10. The settlement administrator, Kurtzman Carson Consultants, shall be paid for its fees and expenses in accordance with the terms of the Settlement Agreement, but in an amount not to exceed $77,750 from the settlement fund.

11. All class members who did not validly and timely request exclusion from the settlement have released claims against defendant, as set forth in the Settlement Agreement.

12. Except as to any class members who have validly and timely requested exclusion, this action is **dismissed with prejudice**, with all parties to bear their own fees and costs except as set forth herein and in the prior orders of this court.

13. Without affecting the finality of this order in any way, the court hereby retains jurisdiction over the parties, including class members, for the purpose of construing, enforcing, and administering the order and Judgment, as well as the Settlement Agreement itself.

14. Judgment shall be entered accordingly.

Dated this 22nd day of December, 2014.

/s/
Fernando M. Olguin
United States District Judge